WILLIAM DEVONEY, Petitioner-Appellant, v. THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, Respondent-Appellee.

First District (1st Division)   No. 1—99—1383

Opinion filed March 26, 2001.—Rehearing denied April 19, 2001.

2

McNULTY, P.J., dissenting.

Thomas J. Pleines, of Chicago, for appellant.

David R. Kugler, of Chicago, for appellee.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Petitioner, William Devoney, a former Chicago police lieutenant, appeals the circuit court's decision to affirm the order of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) denying him pension benefits as a result of his federal conviction for mail fraud. Petitioner contends the Board's interpretation of section 5—227 of the Illinois Pension Code (Code) (40 ILCS 5/5—227 (West 1998)) regarding the relationship of felony convictions to forfeiture of pension benefits was contrary to law, that the Board's decision to apply the forfeiture provisions of section 5—227 of the Code (40 ILCS 5/5—227 (West 1998)) was against the manifest weight of the evidence and that he was entitled to prejudgment interest pursuant to section 2 of the Interest Act (815 ILCS 205/2 (West 1998)). We affirm.

Petitioner was appointed to the Chicago police department in 1960 and attained the rank of lieutenant. On October 20, 1994, petitioner and 24 other persons were indicted by a federal grand jury for conspiracy to commit insurance fraud. Petitioner was named in one count charging mail fraud. He resigned from the police department the following month. On November, 7, 1994, petitioner entered into a written plea agreement with the United States Attorney's office and pled guilty to the charge of mail fraud. In August 1995, the Board refused petitioner's application for retirement benefits on the basis of this felony conviction.

Petitioner testified at a hearing before the Board in September 1995 that he pled guilty to one count of the 61-count federal indictment. This count charged that petitioner and two others, Matt Raimondi and David Ballog, Jr., devised a scheme to defraud and obtain money from an insurance company. Ballog approached petitioner about the scheme to defraud, and petitioner agreed to participate. The count alleged that, as part of the scheme, petitioner conspired with his neighbor, Raimondi, and Ballog to give a false report about the place of a personal injury accident involving petitioner's wife, caused a physician to change a report about the place of the accident, and

spoke with insurance adjustors relating to the claim. Petitioner also used the United States Postal Service to mail evidence of wage losses. Ballog pretended to be petitioner's brother-in-law and helped negotiate a $70,000 settlement for the false claim regarding personal injury to petitioner's wife.

On November 7, 1994, petitioner entered into a plea agreement with the United States Attorney's office and admitted to the facts alleged within the indictment. On June 21, 1995, the federal district court sentenced petitioner to 16 months of imprisonment, plus supervised release and restitution. The Board had before it the indictment and the sentencing transcript. Petitioner admitted before the Board that he was a police officer entitled to carry a weapon at the time of the fraud and part of his duties were to arrest those who committed crimes in his presence.

Petitioner next testified that he had known codefendant David Ballog for 10 years, and he knew that Ballog gambled on horse races, but otherwise had no knowledge of Ballog's criminal activity. After petitioner's wife broke her ankle, Ballog proposed a scheme to defraud an insurance carrier. Petitioner admitted that he did not arrest or report Ballog to the authorities. In connection with this false claim, petitioner spoke with the insurance adjustor. In response to a question from the insurance adjustor, he informed the adjustor that he was a lieutenant with the Chicago police department, but he never met with the adjustor while in uniform. Petitioner did not witness his wife's fall, and his neighbor, Raimondi, with petitioner's knowledge, submitted a false claim to his insurance carrier regarding petitioner's wife. Petitioner did not arrest or report Raimondi.

On July 23, 1998, the Board voted to deny petitioner's application. In a seven-page order, the Board stated that it reviewed the indictment, petitioner's plea agreement, and the transcript of petitioner's sentencing hearing. During the sentencing hearing, the victim of a March 1994 sexual assault testified she believed that petitioner had interviewed her under a false name in an attempt to get her to withdraw her identification of her assailant, who was related to Ballog. Petitioner disputed this testimony and called witnesses to demonstrate that he did not interview the sexual assault victim. The retired police officer whom petitioner was alleged to have impersonated testified that he was the one who interviewed the victim. This credibility issue was considered at length at the sentencing hearing, and the district court determined that the prosecution had proved by a preponderance of the evidence that petitioner interfered with the investigation of the sexual assault. The federal court increased petitioner's sentence based on his obstruction of justice.

Ballog testified at the sentencing hearing that in 1989 he asked petitioner to find out about an outstanding warrant against him. Petitioner loaned Ballog $5,000 for his mortgage payment and gave Ballog $8,500 from the insurance settlement of petitioner's wife's claim. The Board also considered the federal court's finding that petitioner's conduct regarding the sexual assault case was not directly involved with the fraud count, but that petitioner had obstructed justice by hiding the facts involved.

The Board relied on section 5—227 of the Code, entitled "Felony conviction," which states in part: "None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman." 40 ILCS 5/5—227 (West 1998). The Board then found that petitioner had engaged in a "scheme to defraud" which involved his "knowing use of his position as a Chicago Police Officer." It further found that petitioner had obstructed justice in the sexual assault case. Petitioner was not considered to be a credible or truthful witness. The Board noted that petitioner's statements about his relationship to Ballog and knowledge of Ballog's criminal background were contradicted by the record. The Board found that petitioner's "willingness to knowingly participate with others and to protect those co-conspirators was not in keeping with the activity of a police officer and his oath of office." The Board also found that "but for the fact that [petitioner] was a Police Officer of high rank," he would not have been in a position to participate in the scheme to defraud. The Board then denied petitioner's claim for pension benefits.

On August 18, 1998, petitioner brought his petition for administrative review. The circuit court found that the issue was whether petitioner was engaged in "activity relating to or arising out [of] or in connection with his services as a policeman." The court summarized the facts in two cases and chose to follow *Dvorak v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 287 Ill. App. 3d 399, 405-06 (1997), where the board denied pension benefits to a retired policeman, rather than *Cullen v. Retirement Board of the Policeman's Annuity & Benefit Fund*, 271 Ill. App. 3d 1105, 1108-09 (1995). The circuit court confirmed the Board's decision and this appeal followed.

■ Petitioner contends that the Board improperly applied section 5—227 of the Code to the facts of this case. Although both parties maintain that the facts are not in dispute, petitioner asserts that the Board misstated certain facts in its order. The Board's factual findings may be reversed only if they are contrary to the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). A *de novo* standard of review is ap-

plied to the Board's construction of the statute and determination of the law. *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326, 331 (1989). In this analysis, we need not defer to the circuit court's determination (*Zaruba v. Village of Oak Park*, 296 Ill. App. 3d 614, 622 (1998)), although substantial weight is given to an agency's interpretation of a statute it administers. *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 1006 (1999). Pension laws should be liberally construed in favor of those to be benefitted. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 217 (1983).

■ We agree with the Board that, in the context of this case, the application of section 5—227 of the Code presents a mixed question of law and fact. See *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). The Board applies a two-part test when deciding the issue of whether a police officer's pension benefits should be forfeited under the first paragraph of section 5—227. The Board first determines the factual circumstances giving rise to the police officer's felony conviction, which, as this case demonstrates, may be in conflict. The Board then interprets and applies the statutory language "any felony relating to or arising out of or in connection with his service as a policeman" to the facts of the case. Therefore, the proper standard of review is the clearly erroneous standard, which provides some deference to the Board's experience and expertise. *City of Belvidere*, 181 Ill. 2d at 205.

We believe that the Board's factual findings were not clearly erroneous. The findings of fact to which petitioner primarily objects are that: (1) petitioner participated in a scheme to defraud over a long period of time; (2) petitioner obstructed justice with regard to "his conduct with Ballog and the rape case"; and (3) petitioner used his position as a Chicago police officer to further the insurance fraud scheme. There is no dispute over the fact that the insurance scheme in which petitioner was involved was completed within a period of months. In addition, Ballog testified at petitioner's sentencing hearing that he had had a close relationship with petitioner since the early 1980s and that petitioner helped him resolve an outstanding warrant. Based on this record, the Board had sufficient evidence to conclude that Ballog approached petitioner to participate in the insurance fraud scheme because of their close, long-term relationship and that the scheme was completed within a period of months. Second, regarding the obstruction of justice issue, the Board basically adopted the factual findings of the federal district court, which, after a contested hearing, determined that petitioner obstructed justice. The testimony at petitioner's hearing, therefore, provides ample evidence to support this conclusion.

However, applying section 5—227, we may only consider petitioner's felony conviction for mail fraud in determining whether he has forfeited his pension benefits. Petitioner had not been charged with or convicted of any felony related to obstructing justice regarding the sexual assault case, and thus the language of section 5—227 precludes us from considering this conduct in determining whether petitioner has forfeited his pension benefits. Therefore, petitioner's conduct in obstructing justice in the sexual assault case is irrelevant to our analysis of whether petitioner has forfeited his benefits under section 5—227.

The third factual finding that petitioner objects to is the Board's finding that petitioner used his position as a Chicago police officer to further the insurance fraud. In the context of that finding petitioner disagrees with the Board's legal interpretation of section 5—227 which raises the main issue in this appeal: whether the Board's decision that petitioner's mail fraud conviction related to, arose out of, or was in connection with his service as a policeman is clearly erroneous. Section 5—227 states as follows:

"None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman.

None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony while in receipt of disability benefits.

None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with the intentional and wrongful death of a police officer, either active or retired, through whom such person would become eligible to receive, or is receiving, an annuity under this Article." 40 ILCS 5/5—227 (West 1998).

Recently, in *DiFiore v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 313 Ill. App. 3d 546 (2000), the court addressed the second paragraph of section 5—227 in connection with whether a police officer was in receipt of disability benefits at the time of his felony conviction. In *DiFiore*, the Board did not contest that the police officer's felony conviction for the aggravated criminal sexual assault of his niece did not trigger forfeiture under the first paragraph of section 5—227. Consequently, the court focused on the second paragraph of section 5—227; however, it also analyzed the purpose of the statute as a whole. The court reasoned that the "statute presupposes a nexus between the wrongful conduct and the receipt of state compensation or benefits." *DiFiore*, 313 Ill. App. 3d at 551. The court, however, finding no nexus to justify a denial of pension benefits concluded that because

"plaintiff was not receiving, nor was he eligible to receive, disability benefits at the time of his conviction, he does not fall within the purview of the statute and is entitled to his pension." *DiFiore*, 313 Ill. App. 3d at 551. The court further explained that the purpose of section 5—227 is to deter public officials from breaching the public trust and to punish those who do and their beneficiaries by requiring forfeiture of pension benefits. *DiFiore*, 313 Ill. App. 3d at 551.

In *Cullen v. Retirement Board of the Policeman's Annuity & Benefit Fund*, 271 Ill. App. 3d 1105 (1995), the court addressed the first paragraph of section 5—227, which uses the phrase "any felony relating to or arising out of or in connection with his service as a policeman." 40 ILCS 5/5—227 (West 1998). This language clearly contemplates a situation where a police officer could commit a felony unrelated to his duties as a law enforcement official. *Cullen*, 271 Ill. App. 3d at 1109. The court in *Cullen* considered the same question at issue here and determined whether petitioner's felony conviction was related to his service as a policeman and thereby required denial of pension benefits under the felony conviction section of the Code. In *Cullen*, petitioner was involved in a traffic altercation and claimed he shot the victim in self-defense during the altercation. The jury in the criminal trial found Cullen guilty of first degree murder. Regarding the issue of pension benefits, the court in *Cullen* noted that the legislature in the first paragraph of section 5—227 limited the type of felony conviction that could disqualify a police officer from receiving pension benefits. Rather than only requiring the commission of "any felony," as contained within the second paragraph of section 5—227, the legislature chose to limit forfeiture of benefits under the first paragraph as follows:

"None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman." 40 ILCS 5/5—227 (West 1998).

The court in *Cullen* noted the petitioner did not identify himself as a police officer, was dressed in street clothes, and did not use his service revolver. The court in *Cullen*, based on the language of the statute and on the facts, concluded that petitioner's felonious conduct of shooting a man did not trigger forfeiture under the first paragraph of section 5—227. We agree with *Cullen's* interpretation and application of section 5—227 to the facts in that case.

In this case, the trial court in affirming the Board's decision relied on *Dvorak*; however, we do not find *Dvorak* particularly instructive, because the reviewing court in *Dvorak* did not consider the issue presented in this case. In *Dvorak*, a police officer on leave of absence to

serve as an undersheriff in the Cook County sheriff's office was convicted of two felony counts of tax fraud and accepting bribes in the procurement of certain contracts. The officer was receiving his pension when he was convicted, and the Board terminated it. On appeal, the officer argued that he was on a leave of absence and, therefore, not a policeman, as defined by the Pension Code, at the time he committed the felonies. The circuit court disagreed and affirmed the denial of benefits. This court in *Dvorak* affirmed the circuit court and distinguished *Cullen*.

> "In *Cullen*, the issue was whether a police officer's off-duty conduct was sufficiently related to his service as a policeman. In the instant case, however, plaintiff has argued to this court that the issue is whether any inactive policeman is within the purview of the Act." *Dvorak*, 287 Ill. App. 3d at 405.

The court in *Dvorak* did not consider whether the officer's conduct was related to his service as a policeman; therefore, it provides little guidance for resolution of this question, and we elect to follow the court's reasoning in *Cullen*.

We agree with the conclusion in *Cullen* that the exemption provision of the first paragraph of section 5—227 is only triggered by a person's conviction for a felony related to, arising out of, or in connection with that person's service as a policeman. In construing a statue, the statutory language is the best indication of the drafter's intent and unambiguous terms are to be given their plain and ordinary meaning. *Cullen*, 271 Ill. App. 3d at 1108. Every word, clause or sentence of a statute should be applied so that none is superfluous. *Cullen*, 271 Ill. App. 3d at 1109.

In determining whether petitioner has forfeited his pension benefits under the first paragraph of section 5—227, we are limited to the conduct underlying petitioner's felony conviction for mail fraud and must decide if this conduct was related to, arose out of, or was in connection with his service as a policeman. Petitioner was indicted for and convicted of a single count of mail fraud in violation of Title 18, United States Code, sections 1341 and 1342 (18 U.S.C. §§ 1341, 1342 (1994)). The elements of the offense of mail fraud are: (1) a scheme to defraud; and (2) use of the mail for the purpose of executing the scheme. *Schmuck v. United States*, 489 U.S. 705, 721, 103 L. Ed. 2d 734, 750, 109 S. Ct. 1443, 1453 (1989). As to the second element of the count which was the basis for petitioner's conviction, we acknowledge that his use of the mail for the purpose of executing the scheme had nothing to do with his service as a policeman. However, mail fraud also requires the government to prove a scheme to defraud, which we believe in this case established conduct related to petitioner's service as a policeman.

The indictment alleged that petitioner devised and participated in a scheme with Ballog and Raimondi to defraud an insurance company and used false and fraudulent pretenses. In his plea agreement and his testimony before the Board, petitioner admitted that he "conspired" with Ballog and Raimondi. Petitioner further testified that Ballog approached him with the scheme and that petitioner agreed to participate with Ballog and Raimondi. At that point, petitioner did not arrest or report Ballog or Raimondi, but facilitated, allowed, encouraged, aided and abetted Ballog and Raimondi in committing a fraud against the insurance company. As a result of the scheme to defraud, petitioner collected $70,000 and split the money with Ballog and Raimondi. Therefore, petitioner's conduct of entering into a scheme to defraud with others and carrying out the scheme went beyond a single act of individual, personal, criminal conduct while off duty. See *Cullen*, 271 Ill. App. 3d at 1109. Petitioner's conduct involved the decision to act in concert with others rather than by himself and facilitate the criminal conduct of others. See *DiFiore*, 313 Ill. App. 3d at 551. We believe this conduct underlying the scheme to defraud involved ongoing criminal activity of Ballog and Raimondi committed in Devoney's presence and thereby implicated petitioner's duties as a police officer. The Illinois Code of Criminal Procedure of 1963 provides the following:

> "It is the duty of every *** policeman *** when a criminal offense or breach of the peace is committed or attempted in his or her presence, forthwith to apprehend the offender and bring him or her before a judge, to be dealt with according to law; to suppress all riots and unlawful assemblies, and to keep the peace ***." 725 ILCS 5/107—16 (West 1998).

That section defines the duty of every police officer in connection with his service as a policeman. By participating in a scheme to defraud with others and concealing the scheme, petitioner breached his duty to report crime, which is a duty arising out of or in connection with his service as a policeman. The public demands faithfulness from police officers to their duty to report and arrest others involved in criminal activity. The purpose of section 5—227 is to deter public officials from breaching the public trust. *DiFiore*, 313 Ill. App. 3d at 551.

This mail fraud scheme could not have been implemented had petitioner reported or arrested Ballog and Raimondi. Devoney admitted that he did not arrest or report his co-conspirators. During the course of the fraudulent scheme in response to a question from the insurance adjustor, Devoney told the insurance adjustor that he was a lieutenant with the Chicago police department, but he never met with

the adjustor while in uniform. Regardless of whether Devoney was on duty or off duty, in uniform or not in uniform, the law required Devoney to report crime and arrest persons engaged in criminal conduct. The requirement to report crime and arrest persons engaged in criminal conduct is directly related to Devoney's service as a policeman. The choice made by Devoney not to report or arrest Ballog and Raimondi therefore was related to Devoney's service as a policeman. The evidence in the record demonstrates a nexus between petitioner's wrongful conduct and his receipt of state benefits because his felony conviction was related to his duties as a policeman. Under section 107—16 it is the specific duty to arrest persons who commit crimes, as required of Devoney whether on duty or off duty, in connection with his service as a police officer, that renders Devoney's conviction of mail fraud a felony conviction "relating to or arising out of or in connection with his service as a policeman" and thereby exempt from benefits under section 5—227.

Our analysis is not based on a finding that section 107—16 describes criminal conduct. We are not saying that Devoney's failure to arrest Ballog and Raimondi constituted the felony relating to his service as a policeman which triggers exemption from benefits under section 5—227. It is Devoney's conviction for mail fraud that constitutes the felony conviction that triggers exemption from benefits under section 5—227 because the scheme to defraud established conduct related to Devoney's service as a policeman. Devoney's duty to arrest Ballog and Raimondi, while engaging in the criminal scheme to defraud was required of Devoney in connection with his service as a policeman under section 107—16 and that duty renders Devoney's conviction of mail fraud a felony relating to or in connection with his service as a policeman.

■ Contrary to the conclusion reached by the dissent, we do not intend to overrule *Cullen*. We agree with the analysis and the conclusion reached in *Cullen*. However, *Cullen* differs factually from this case. Devoney, unlike Cullen, was not engaged in a personal matter of individual criminal conduct unrelated to his service as a policeman. Had Devoney engaged in mail fraud without co-conspirators, his conduct would be more analogous to the individual criminal conduct found in *Cullen* to be unrelated to Cullen's service as a policeman. Here, Devoney chose over a period of months to conspire with others and allow others to engage in criminal conduct in direct violation of his duty as a police officer to arrest persons who commit crimes. 725 ILCS 5/107—16 (West 1998). Devoney's choice to criminally conspire with Ballog and Raimondi and to allow them to engage in criminal activity without reporting or arresting them triggers application of

section 5—227 and provides a factual basis for the Board's conclusion that petitioner's felony conviction was related to his service as a policeman. Therefore, based on the totality of the circumstances, we conclude that the Board's decision to terminate petitioner's benefits pursuant to the first paragraph of section 5—227 was not clearly erroneous.

We need not decide the issue of prejudgment interest because we conclude that the Board properly terminated petitioner's pension benefits.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COHEN, J., concurs.

PRESIDING JUSTICE McNULTY, dissenting:

The majority has determined that the involvement of Devoney with Ballog and Raimondi related to Devoney's service as a policeman because he did not arrest them or report them to other officers but, instead, facilitated, allowed, encouraged, aided and abetted them in committing a fraud against the insurance company.

I cannot support the position of the majority that, if a policeman violates his statutory duties or his oath of office by failing to report a crime or arrest persons engaged in criminal conduct in which he was a participant, this constitutes a sufficient nexus between the crime and his service as a policeman to trigger the application of section 5—227 of the Pension Code. A policeman cannot commit any crime, felony or misdemeanor without violating his oath of office or his duties under section 107—16 of the Illinois Code of Criminal Procedure. 725 ILCS 5/107—16 (West 1998).

The majority attempts to distinguish *Cullen*, 271 Ill. App. 3d 1105, on the basis that Cullen acted alone, but Devoney acted in concert with others. Nothing in section 107—16 limits its application to crimes committed by others or otherwise supports the distinction the majority tries to draw. If Devoney's conduct related to his service as a policeman because he violated his duty under section 107—16 when he failed to arrest Ballog after he saw Ballog commit a crime, then Cullen's conduct equally related to his service as a policeman, because he violated the same duty when he failed to arrest himself after he saw himself commit a crime. The majority's approach effectively overrules *Cullen*, and that well-reasoned opinion deserves a better fate.

As the majority concedes, there is little question that Devoney's

felonious act in furtherance of the scheme to defraud, the mailing of material relating to a false report of the circumstances of his wife's accident, had nothing to do with his service as a policeman. His plea agreement contained no admission that he used his position as a police officer to facilitate the operation of the scheme. Under *Cullen*, the conviction is not related to Devoney's service as a police officer, and therefore the Board committed clear error by deciding to terminate Devoney's pension benefits.

If a policeman is convicted of a felony while receiving disability benefits under the Pension Code he forfeits them. 40 ILCS 5/5—227 (West 1998). If he commits a felony while receiving pension benefits he forfeits them only if the felony of which he was convicted related to or arose out of or in connection with his service as a policeman. 40 ILCS 5/5—227 (West 1998). A comparison of the two paragraphs in the section shows that the legislature contemplated situations in which a policeman could be convicted of a felony having no connection to his responsibilities as a police officer and still retain the right to receive pension benefits. *Cullen*, 271 Ill. App. 3d at 1109. If the legislature had intended to provide that pension benefits were subject to forfeiture in the same manner as disability benefits, it could have so provided. It did not. This court has struggled to define the circumstances under which a felony committed by a police officer is sufficiently connected with the performance of police duties that it triggers forfeiture of pension benefits, as the special concurrences and dissents in cases involving this issue amply demonstrate. See, *e.g.*, *Dvorak*, 287 Ill. App. 3d at 406 (Gordon, J., dissenting); *Pascente v. Retirement Board of the Policemen's Annuity & Benefit Fund*, No. 1—95—4367 (1997) (unpublished order under Supreme Court Rule 23) (Hoffman, J., specially concurring; South, J., dissenting).

Legislation specifically governs pension benefits and their forfeiture. The separation between the legislative and judicial function is vital to our system of government and judges should not redraft the law to bring felonious conduct within the forfeiture provisions of the statute when its plain language as written does not so provide. As our supreme court has stated: "It is not for courts to pass upon what the *** laws ought to be, but to declare what they are." *People v. Wilcox*, 237 Ill. 421, 428 (1908).

Therefore, I respectfully dissent.