THIRD DIVISION

August 29, 2001

1-00-4147

RAYMOND SIWEK, )   Appeal from the

)   Circuit Court of

Plaintiff-Appellee, )   Cook County.

)

v. )  

)  

THE RETIREMENT BOARD OF THE )   

POLICEMEN'S ANNUITY & BENEFIT FUND, )

CITY OF CHICAGO, et. al., )   Honorable Dorothy

)   Kirie Kinnaird,

Defendants-Appellants. )   Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

    The question in this case is whether a retired Chicago police officer is entitled to receive his annuity and pension benefits despite being convicted of two felony drug offenses.  The answer requires us to explore the relation or connection, if any, between the felonies and his service as a policeman.  We conclude this former police officer is not entitled to benefits.

FACTS

     Neither party disputes the underlying facts of this case. 

     In 1992, Chicago police officer Raymond Siwek was convicted of two counts of unlawful possession of a controlled substance.  At trial, the State's evidence showed Siwek met with a friend, Brian Marchese, on May 6, 1992.  Siwek gave Marchese $12,500 in order to purchase narcotics.  Marchese later met with Weiss, an undercover detective, and paid Weiss for cocaine.  Marchese was arrested.

     Marchese then became an informant for the police.  He agreed to participate in a trap to expose Siwek as the source of his funds.  Marchese contacted Siwek and organized another drug purchase.  Siwek was arrested when he came to Marchese's house and bought cocaine from Weiss.     

     During his criminal trial, Siwek testified he became a Chicago police officer in 1968.  In 1971, Siwek was assigned to the "special operations group," a tactical unit assigned to high crime areas in Chicago.  After spending several years in this unit, Siwek was transferred to the gang crimes unit.  Siwek testified his work in the gang crimes unit included narcotics work and "undercover buys."  In 1980 or 1981, Siwek was transferred to the organized crime division within the police department.  His work in that unit included arresting large-scale drug dealers.  Siwek testified he also made "undercover buys" as part of his duties in this unit.  

     In early 1983, Siwek was promoted to the rank of detective and transferred to the violent crimes unit.  Siwek's "specialty" within that division was in narcotic-related homicides.  In 1987, Siwek was assigned to the narcotics section for the deputy director of the U.S. Attorney's office.  

     In 1989, Siwek was transferred to the property crimes unit of the Chicago Police Department.  Siwek testified he continued to be involved in narcotic investigations.  He said that over the course of his career, he was involved in at least 500 narcotic arrests, had made 50 to 75 "buys," and had made half a dozen arrests when he was not on-duty.

     Siwek said he met Brian Marchese while they were in the Illinois Army National Guard.  At some point, Siwek became aware that Marchese had a drug and alcohol problem.  

     Siwek testified Marchese contacted him in early 1992 about  a DUI charge that was pending against him.  Marchese asked Siwek if someone from the Chicago police department could write him a "letter of consideration" to give to the judge who was handling the DUI charge.  Marchese told Siwek he would give the department information on narcotic activity in exchange for the letter.  Siwek introduced Marchese to a detective in the organized crime division of the Chicago police department and Marchese became an informant for the department.

     Siwek said Marchese contacted him several times after he became an informant.  Marchese passed information to Siwek, who in turn passed it on to another detective in the police department.  Siwek didn't know if anyone followed up on the information.  Siwek eventually told Marchese to give the information to the detective who helped Marchese become an informant.  

     Siwek's primary defense at trial was based on his claim that he became involved in buying narcotics through Marchese as part of a "sting" operation.  Siwek testified he never gave Marchese $12,500 to purchase narcotics.  Siwek said he gave Marchese $2,500 after Marchese called and asked for a loan.  Siwek said Marchese gave him the title to his truck as collateral for the loan.  Siwek said he did not know Marchese intended to purchase drugs with the money he loaned him.  

     After Marchese picked up the money, Siwek received a phone call from him.  Marchese told Siwek he had been arrested.  The next day, Marchese called Siwek again.  Siwek said Marchese told him he was arrested for trying to buy a large amount of cocaine. Siwek assumed Marchese was arrested with the person who supplied the drugs.  Marchese said he lost $10,000 that belonged to other people when he was arrested.  Siwek testified Marchese asked if he could borrow money.  Siwek refused to loan Marchese any more money.  Marchese asked for help with the charges against him. 

     Siwek testified he agreed to set up a "sting" operation with Marchese.  Siwek said he told Marchese he would supply the money if Marchese would "set up" the person who supplied the cocaine.  Marchese arranged the purchase.  Siwek was arrested as he was leaving Marchese's house after he bought cocaine from undercover detective Weiss.  

     Siwek testified he did not contact anyone in the police department about the "sting" he was setting up with Marchese.  Siwek said he was going to contact his supervisor after he received the cocaine.  

     The jury convicted Siwek on the narcotics charges and he was sentenced to 15 years in prison.

     After Siwek was convicted and sentenced, he resigned from the police department.  In 1998, Siwek and his wife applied to the Retirement Board of the Policemen's Annuity and Benefit Fund (Board) for reinstatement of his annuity and pension benefits.  The Board had been withholding these benefits based on Siwek's convictions.  

     The Board denied Siwek's petition.  The Board's decision included the following findings of fact:

"A.  Siwek was an experienced 24 year veteran police officer, having at times been assigned to narcotics investigations as well as to high profile criminal investigations.

B.  Siwek was for many years acquainted with one of the participants in the criminal activity and knew that individual to be a drug dealer and addict.

C.  This specific nature of Siwek's felonious conduct and resulting convictions undermined the oath of office Siwek took as a police officer to perform act [sic] and engage in services related to protecting the citizens of the City and to prevent crimes against the citizens.

D.  Siwek's felony conviction related to, arose out of and was in connection with his service as a policeman.

E.  Pursuant to 40 ILCS 5/5-227 entitled felony conviction, Siwek is not entitled following his conviction to the receipt of any annuity benefit."   

     Siwek filed a petition for administrative review with the circuit court.  The circuit court reversed the Board's decision, finding Siwek's convictions were not related to his service as a police officer.  The court ordered the Board to restore Siwek's pension benefits and awarded Siwek pre-judgment interest.  The Board appeals this order. 

DECISION

Entitlement to Pension Benefits

     The Board contends the circuit court erred in reversing it's decision denying reinstatement of Siwek's benefits.  According to the Board, under section 5-227 of the Pension Code (Code)(40 ILCS 5/5-227 (West 1998)), Siwek is not entitled to benefits because the crimes for which he was convicted (two counts) were related to his service as a police officer.  Siwek contends the Board misinterprets the statute in reaching that conclusion, and claims the circuit court's finding that the conviction was unrelated to his service as an officer was correct. 

    Where a party appeals the circuit court's decision on a complaint for administrative review, the appellate court's role is to review the administrative decision rather than the circuit court's decision.  
Calabrese v. Chicago Park District
, 294 Ill. App. 3d 1055, 1065, 691 N.E.2d 850 (1998).  Although a reviewing court may not reverse findings of fact made by an administrative agency unless they are contrary to the manifest weight of the evidence (
Chicago Transit Authority v. Doherty
, 291 Ill. App. 3d 909, 912, 684 N.E.2d 867 (1997)),  an issue of statutory construction raises a question of law subject to 
de
 
novo
 review.  
DiFiore v. Retirement Board
, 313 Ill. App. 3d 546, 548, 729 N.E.2d 878 (2000).   

     Section 5-227 of the Code says, in part:

     "Felony conviction.  None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman.

None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony while in receipt of disability benefits."  40 ILCS 5/5-227 (West 1998).

     Only the first paragraph of section 5-227 applies to this case.

     Plaintiff contends the Board's construction of the statute mandated reversal because "[t]he Board has erroneously construed this forfeiture statute so broadly that a conviction for 
any
 felony would cause a forfeiture of benefits."  (Emphasis in original).  We do not agree.

     There are a handful of opinions which construe the language in section 5-227 of the Code.  They are not a model of consistency.  In the first, 
Cullen v. Retirement Board of the Policeman's Annuity and Benefit Fund of the City of Chicago
, 271 Ill. App. 3d 1105, 649 N.E.2d 454 (1995), Cullen, a retired officer, shot and killed another motorist during an altercation after the motorist "cut off" Cullen in traffic.  Cullen was not on duty when the crime occurred.  

     When the Board learned of Cullen's conviction, it stopped paying his pension benefits.  Cullen sought to have his pension benefits restored.  After a hearing, the Board denied Cullen reinstatement of his benefits.  This court reversed the Board's decision:

     "The first paragraph of section 5-227 uses the phrase 'any felony relating to or arising out of or in connection with his service as a policeman.' [Citation.] Thus, the statute clearly contemplates the existence of situations where a police officer could commit a felony unrelated to his law enforcement duties.

     Moreover, legislative intent must be garnered from a review of the entire statutory plan. [Citation.] The second paragraph of section 5-227 provides that no 'benefits *** shall be paid to any person who is convicted of any felony while in receipt of disability benefits.' [Citation.] Here, the General Assembly did not require circumstances relating to, arising out of or in connection with police service attendant to a felony conviction in order to disqualify an officer from receiving disability benefits.  Rather, all that is required is the commission of 'any felony.' ***

     *** [A]s there is no evidence demonstrating that plaintiff's criminal actions were in any way related to or arose out of or in connection with his service as a Chicago police officer, we reverse the judgment of the circuit court and remand this cause to it with instructions that it enter an order reinstating plaintiff's pension benefits."  
Cullen
, 271 Ill. App. 3d at 1109.

     After 
Cullen
 was decided, this court examined section 5-227 again in 
Dvorak v. The Retirement Board of the Policeman's Annuity and Benefit Fund
, 287 Ill. App. 3d 399, 678 N.E.2d 677 (1997).  
Dvorak had taken a leave of absence from the department to work as an "undersheriff" for the Cook County sheriff's office, but continued to contribute to his pension fund with the police department during his leave of absence.  Dvorak was convicted, in part, for having taken bribes in relation to his service as an undersheriff.  After he was convicted, the Board denied Dvorak pension benefits.  The circuit court affirmed the Board's decision.

     On appeal, the issue was not whether, given the facts of the underlying conviction, the felony itself was "related to" service as an officer.  Instead, Dvorak claimed the Board could not deny him pension benefits under section 5-227 because he was on a leave of absence from the police department when he committed the felonies and was not serving as a Chicago police officer.  This court affirmed the Board's denial of benefits in a divided decision, finding Dvorak still was a Chicago police officer during his leave of absence and therefore fell under the proscription of section 5-227.  This court also found:

"[T]he specific nature of plaintiff's felonious conduct and resulting convictions undermined the oath of office plaintiff took as a policeman to perform acts and engage in services related to protecting the citizens of the city and county and to prevent crimes against the citizens.  These facts are particularly persuasive in finding that plaintiff remained within the purview of the Code even as an inactive police officer."  
Dvorak
, 287 Ill. App. 3d at 406.

     We again examined the forfeiture of pension benefits under section 5-227 in 
DiFiore v. The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago
, 313 Ill. App. 3d 546, 729 N.E.2d 878 (2000).  However, in 
DiFiore
, the Board's decision denying benefits was based on the second paragraph of section 5-227, which says that an officer will not receive any benefits if he is convicted of "any felony" while in receipt of disability benefits.  40 ILCS 5/5-227 (West 1998).

     DiFiore was on disability leave when he was indicted for criminal sexual assault of a minor.  The police department suspended DiFiore, and the Board suspended his disability benefits.  When DiFiore applied for pension benefits, the Board denied his request, finding he was not entitled to benefits under section 5-227 because he was convicted of a felony while receiving disability benefits.

     This court reversed the Board's decision, finding DiFiore was not receiving, and was not eligible to receive, disability benefits at the time of his conviction.  

     Though 
DiFiore
 involved analysis under the second paragraph of section 5-227, rather than the first paragraph, once we determined the second paragraph did not apply to DiFiore, we discussed the intent underlying section 5-227:

     "We reject the Board's assertion that to allow plaintiff his pension would defeat the intent of section 5-227.  The underlying rationale for the pension forfeiture statutes is to deter public officials from committing a breach of public trust such that public officials and their beneficiaries do not profit from their wrongdoing.  In 
Kerner v. State Employee's Retirement System
, [citation], our supreme court held that the underlying purpose of the felony forfeiture provision is 'to discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled.'  The statute presupposes a nexus between the wrongful conduct and the receipt of state compensation or benefits.  Here, plaintiff was not receiving disability benefits at the time he committed the felony or at the time of his conviction, and the felony was not related to his law enforcement duties.  Thus, denying plaintiff his benefits does not further the intent of the legislature because the nexus between the wrongful conduct and the receipt of state benefits was not implicated here."  
DiFiore
, 313 Ill. App. 3d at 551, quoting 
Kerner v. State Employee's Retirement System
, 72 Ill. 2d 507, 513, 382 N.E.2d 243 (1978).

     This focus on the need for a "nexus" between the wrongful conduct, or "official malfeasance," and the receipt of state benefits seems at odds with this court's recent opinion in 
Devoney v. The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago
, 321 Ill. App. 3d 1, 746 N.E.2d 836 (2001), our last word on the subject until now.  

     In 
Devoney
, Devoney pled guilty to mail fraud after he and two neighbors, Ballog and Raimondi, attempted to defraud an insurance company by filing a bogus personal injury claim.  Devoney used the U.S. Postal Service to mail evidence of wage losses to the insurance company in an attempt to carry out his scheme.  When he applied for pension benefits the Board denied his request.  This court affirmed the Board's decision:

     "The indictment alleged that petitioner devised and participated in a scheme with Ballog and Raimondi to defraud an insurance company and used false and fraudulent pretenses.  In his plea agreement and his testimony before the Board, petitioner admitted that he 'conspired' with Ballog and Raimondi.  Petitioner further testified that Ballog approached him with the scheme and that petitioner agreed to participate with Ballog and Raimondi.  At that point, petitioner did not arrest or report Ballog or Raimondi, but facilitated, allowed, encouraged, aided and abetted Ballog and Raimondi in committing a fraud against the insurance company.  As a result of the scheme to defraud, petitioner collected $70,000 and split the money with Ballog and Raimondi.  Therefore, petitioner's conduct of entering into a scheme to defraud with others and carrying out the scheme went beyond a single act of individual, personal, criminal conduct while off duty. [Citation].  Petitioner's conduct involved the decision to act in concert with others rather than by himself and facilitate the criminal conduct of others. [Citation]. ***

***

     *** By participating in a scheme to defraud with others and concealing the scheme, petitioner breached his duty to report crime, which is a duty arising out of or in connection with his service as a policeman.  The public demands faithfulness from police officers to their duty to report and arrest others involved in criminal activity.  The purpose of section 5-227 is to deter public officials from breaching the public trust. [Citation].  

     *** Regardless of whether Devoney was on duty or off duty, in uniform or not in uniform, the law required Devoney to report crime and arrest persons engaged in criminal conduct.  The requirement to report crime and arrest persons engaged in criminal conduct is directly related to Devoney's service as a policeman.  The choice made by Devoney not to report or arrest Ballog and Raimondi therefore was related to Devoney's service as a policeman."  
Devoney
, 321 Ill. App. 3d at 9-10.

     The dissenting opinion in 
Devoney
 did not agree with this focus:

     "I cannot support the position of the majority that, if a policeman violates his statutory duties or his oath of office by failing to report a crime or arrest persons engaged in criminal conduct in which he was a participant, this constitutes a significant nexus between the crime and his service as a policeman to trigger the application of section 5-227 of the Pension Code.  A policeman cannot commit any crime, felony or misdemeanor without violating his oath of office or his duties under section 107-16 of the Illinois Code of Criminal Procedure.  [Citation]."

     In 
Devoney
, the majority focused on the violation of the officer's oath or statutory duty as the "nexus" between his conviction and his service as a police officer.  The violation was Devoney's failure to report the crimes of his co-conspirators and his failure to arrest them.  In that way, the majority distinguished 
Cullen
, where the off-duty officer acted alone.  It may be a distinction, but it is not a persuasive difference.

     We do not subscribe to the majority's reasoning.  Every time a police officer is convicted of a felony he has violated his oath of office.  When a police officer is convicted of a crime, he has violated the law he has sworn to obey.  The fact of a felony conviction, standing alone, cannot, within the plain meaning of paragraph one of section 5-227, be enough to deprive a police officer of his pension.  To so hold would be to rewrite the statute, something we are not authorized to do.

     The question in every paragraph one case is whether the felony the officer was convicted of related to, or arose out of, or was in connection with, his service as a policeman.  Each phrase in the paragraph has a slightly different meaning, of degree, not kind.  We are required to assume none of the language used in a statute is superfluous.  
Niven v. Siqueira
, 109 Ill. 2d 357, 365, 487 N.E.2d 937 (1985).  

     Our inquiry in this case has to do with whether Siwek's conviction was related to his service as a police officer.  The two possession counts did not occur in a vacuum.  We do not analyze the conviction solely on the basis of what happened on the day of the arrest.  That would be parsing the first paragraph of section 5-227 with too sharp a scalpel.  We believe the legislature's charge to us is to examine the conviction in a way that deters police officers from violating the public trust while refraining from distorting the clear words of the statute.  We look to the circumstances that led to Siwek's conviction, and in particular we examine the relationship between Siwek and Marchese, a necessary ingredient of the State's charges.

     We agree with the Board that Siwek's conviction was connected to, or, at the very least, was related to his service as an officer.  Siwek was a police officer who spent most of his career specializing in narcotics violations.  Logic compels us to conclude Siwek called upon the specialized knowledge he gained in his service as a police officer when he committed the felony for which he was convicted.

     Siwek used Marchese, a police informant, to set up a drug purchase for him.  Siwek knew Marchese was an informant who had a number of connections with narcotics dealers.  In fact, Siwek helped Marchese become an informant after Marchese asked for his help in avoiding a DUI conviction.  Marchese's knowledge as an informant was meant to be used to aid the police department in arresting offenders.  Siwek instead used it to set up personal transactions for his own profit.

     Siwek's knowledge as a narcotics specialist, his connection with Marchese as a police informant, and the relationship Marchese had with the police department are all related to Siwek's service as a police officer.  At the underlying criminal trial, Siwek claimed he was acting as a police officer when he bought the cocaine.  

     Siwek's acts constitute the type of "official malfeasance" the 
DeFiore
 and 
Cullen
 courts found should result in a loss of benefits under section 5-227.  We find Siwek is not entitled to benefits under section 5-227 because his convictions were related to or connected with his service as an officer.

CONCLUSION

     We reverse the judgment of the circuit court and affirm the Board's decision.

     Reversed.

CERDA, and BURKE, JJ., concur.