THIRD DIVISION

May 17, 2000

No. 1--98--4459

METROPOLITAN WATER RECLAMATION   ) Appeal from the 

DISTRICT OF GREATER CHICAGO,   ) Circuit Court of

   ) Cook County.

Plaintiff-Appellee,    )

   )

v.        )

   )

DEPARTMENT OF REVENUE   )

OF THE STATE OF ILLINOIS,   ) Honorable

   ) Alexander P. White,

Defendant-Appellant.   ) Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Defendant Department of Revenue of the State of Illinois (the Department) appeals from an order of the circuit court reversing, on administrative review, the Department's denial of a request sought by plaintiff Metropolitan Water Reclamation District (the District) for a tax exemption on certain property owned by the District.  The Department contends on appeal that its decision to deny the District a tax exemption for its property was not clearly erroneous because that property was more than incidentally used for taxable purposes.  For the reasons set forth below, we reverse the circuit court and affirm the Department's determination that the District's property did not qualify for an exemption from taxation.

The District, a municipal corporation whose corporate purposes are treatment and disposal of sewage for 98% of Cook County, sought an exemption from real property taxes for the 1994 tax year for property it owned that it was leasing to a private corporation.  The District alleged in its complaint filed with the Cook County Board of (Tax) Appeals (the Board) that the subject property was exempt from real estate taxation under section 15--75 of the Illinois Property Tax Code (Code) (35 ILCS 200/15--75 (West 1994)).  The Board recommended to the Department that it approve the requested exemption, but with the 
proviso
 that the lessee's leasehold interest in the property was subject to taxation.  The Department, however, disapproved the Board's recommendation by issuing a certificate finding that the property was not in exempt use.  

Subsequent to the Department's finding, the District filed a request for a formal administrative hearing, during which the following evidence was presented.  The property, having no legal address, is located on the east bank of the channel.  It consists of a four-acre rectangular-shaped tract, 260 feet in width and 670 feet in length, and is bordered on its western side by the channel's bank and on its northern side by the Chicago Transit Authority's Skokie Swift right of way.  The District had purchased the property by indenture in 1909 as part of a right of way for the North Shore Channel (channel), and the District had acquired the property in the event the District would be required to either construct release sewers running parallel to the channel and/or to widen or deepen the channel.  

In 1950, the District granted a 99-year lease to the property to K & K Excavators (K&K) subject to a prior agreement between the District and Hibbard, Spencer, Bartlett & Company (Hibbard) under which Hibbard was allowed to operate and maintain a 48-inch storm-

water drain which it owned and which ran through the property on a line parallel to the property's south line.  In 1957, K&K assigned its leasehold interest to the Cosmopolitan National Bank of Chicago which, in turn, assigned its leasehold interest to Crossover, Inc. (Crossover), a wholly owned subsidiary of Shure Brothers, Inc. (Shure).  

Thereafter, in 1976, the  District and Crossover executed an amendment to the original lease, restricting Crossover's use of the property until October 2000 to only the parking of vehicles such as automobiles, bicycles, and motorcycles.  The amendment also confirmed and ratified provisions in the original lease requiring the lessee to pay, in addition to rent, all taxes, assessments, and water rates against the demised premises or any part thereof and prohibiting the lessee from doing anything on the property that would, in the opinion of the District's chief engineer, cause erosion, shifting, or caving on the channel's banks.  While the amendment expressly eliminated the District's right to maintain an easement for a cinder pathway on the demised property, it left the following provisions of the original lease undisturbed: one reserving in the District the right to construct, reconstruct, maintain and operate intercepting sewers, drain outlets, and pipelines for electrical transmission as needed for the District's corporate purposes; one reserving in the District the right to use, at any time, a 30-foot wide strip of the demised premises as a free means of access for the District's property lying north of the leased premises; one reserving in the District the right to terminate the lease with respect to the same 30-foot strip of land;  and one reserving in the District the right of access to the demised premises at all times.  

Further evidence presented during the administrative hearing revealed that the property was used by Shure as a paved parking lot for its employees during the 1994 tax year.  Dr. Amreek Paintal, a professional engineer and head of the District's civil engineering and sewer design section, testified that the District had no facilities on the property, although the District's maintenance vehicles would traverse the property "at least once a month" during 1994 to gain access to District facilities located adjacent to the property.  According to Dr. Paintal, in the event that repairs to those facilities were needed, heavy equipment "might" also need to traverse the property and such equipment "might" have to remain on the site for three to four days.  

Following the administrative hearing, the administrative law judge (ALJ) issued a recommended decision, denying the District a tax exemption on its property for the 1994 tax year.  The ALJ found that the District had failed to bear its burden of demonstrating that the property was "used exclusively for public purposes" during the tax year 1994 as required by section 15--75 of the Code (35 ILCS 200/15--75 (West 1994)), and it further found that the evidence which the District had presented demonstrated that the District's use of the property for public purposes during the tax year 1994 was at best "periodic."  The ALJ concluded that the property was not entitled to a tax exemption for the 1994 tax year because the District had leased the property to Crossover, a private entity, and the property was primarily used by Crossover for private commercial purposes.  Any tax exempt use of the property, according to the ALJ, was merely incidental.  The ALJ rejected the District's claim that the District's fee interest in the property should remain tax exempt while Crossover's leasehold interest should be taxed.  The ALJ determined that section 9--195 of the Code (35 ILCS 200/9--195 (West 1994)), which provides for taxation of leaseholds, only applies where the owner's underlying fee interest in the property is tax exempt and the leasing of the property does not render that property taxable.  The Department subsequently accepted the ALJ's recommended decision as dispositive of the issues.  

Thereafter, pursuant to the Administrative Review Law (735 ILCS 5/3--101 
et seq
. (West 1994)), the District sought administrative review in the circuit court of the Department's decision.  The District asserted that it had used the property at issue primarily as a right of way and for drainage purposes.  The District further asserted that while it had leased the property to a private corporation, it had retained easements over the property that had substantially limited the lessee's use of that property.  The District argued that the Department's decision to deny the property tax exempt status was arbitrary, capricious, contrary to law and against the manifest weight of the evidence, and also violated the District's right to equal protection of the law.  The District asked the court to reverse the Department's decision, order the Department to certify that the property was exempt from taxation for the tax year 1994 and all subsequent tax years, and further order that the property be "subjected to a leasehold tax bill for the improvement portion of the current assessment."  Following arguments by both parties, the court reversed the Department's decision, holding that it was against the manifest weight of the evidence and contrary to applicable law.  This appeal followed pursuant to section 3--112 of the Administrative Review Law (735 ILCS 5/3--112 (West 1994)).

The Department contends that its decision to deny the District tax exempt status for the District's property was not clearly erroneous because that property, which the District leased to a private entity, was not primarily used for public purposes after such leasing.  The Department argues that the District failed to demonstrate that its property was primarily used for a tax exempt public purpose and that any taxable use of its property was merely incidental.  In response, the District argues that the trial court correctly held that the property should be exempt from real estate taxes because that property was owned by a municipal corporation and used to perform the municipal corporation's public functions.  The District asserts that such property should not be stripped of its tax exempt status merely because the municipal corporation enters into a restrictive lease with a private corporation, providing for limited and incidental private use of the property as an employee parking lot, but reserves in itself superior and preemptive rights to the property.

In reviewing an administrative agency's decision made pursuant to the Administrative Review Law, this court reviews the decision and not the circuit court's determination.  See 
Richard's Tire Co. v. Zehnder
, 295 Ill. App. 3d 48, 56, 692 N.E.2d 360 (1998).  This case concerns whether the Department properly applied the municipal property tax exemption.  This is a mixed question of law and fact; thus, this court may only overturn the Department's decision if it is clearly erroneous.  See 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998); 
XL Disposal Corp., Inc. v. Zehnder
, 304 Ill. App. 3d 202, 207, 709 N.E.2d 293 (1999).  The clearly erroneous standard requires a level of deference between that accorded the manifest weight standard and that accorded the 
de novo
 standard of review.  See 
Belvidere
, 181 Ill. 2d at 205.  Review of pure questions of law are 
de novo
, but an agency's construction is still entitled to substantial weight and deference.  See 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 98, 606 N.E.2d 1111 (1992).  This deference stems from the fact that agencies make informed judgments on the issues based upon their experience and expertise and are also an informed source for ascertaining the legislature's intent.  See 
Abrahamson
, 153 Ill. 2d at 98; see also 
Boaden v. Department of Law Enforcement
, 171 Ill. 2d 230, 241, 664 N.E.2d 61 (1996) (Freeman, J., specially concurring).

It is well established in Illinois that a statute exempting property from taxation must be strictly construed against exemption, with all facts construed and debatable questions resolved in favor of taxation.  See 
Chicago Patrolmen's Ass'n v. Department of Revenue
, 171 Ill. 2d 263, 271, 664 N.E.2d 52 (1996); 
City of Chicago v. Illinois Department of Revenue
, 147 Ill. 2d 484, 491-92, 590 N.E.2d 478 (1992); 
XL Disposal
, 304 
Ill. App. 3d at 208.  The taxpayer seeking an exemption bears the burden of proving clearly and conclusively that it is entitled to such an exemption.  See 
XL Disposal
, 304 Ill. App. 3d at 208. 

Under the Illinois Constitution, the General Assembly may exempt from taxation only 

"the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes."  Ill. Const. 1970, art. IX, §6.  

The above constitutional provision is not self-executing; rather, it merely authorizes the legislature to enact laws exempting property from taxation within the imposed constitutional limitations.  See 
Chicago Patrolmen's Ass'n
, 171 Ill. 2d at 269.  In accordance with this constitutional authority, the Illinois legislature enacted section 15--75 of the Code, which provides:

"All market houses, public squares and other public grounds owned by a municipal corporation and used exclusively for public purposes are exempt."  35 ILCS 200/15--75 (West 1994).  

A municipal corporation is not entitled to obtain a tax exemption on property merely by virtue of its ownership of that property.  See 
Sanitary District of Chicago v. Martin
, 173 Ill. 243, 248, 50 N.E. 201 (1898).  Rather, such a municipal corporation must demonstrate that its property is used exclusively for tax exempt public purposes.  See 
Metropolitan Sanitary District of Greater Chicago v. Rosewell
, 133 Ill. App. 3d 153, 155, 478 N.E.2d 1100 (1985).  
Property will be deemed to be exclusively used for public purposes when the primary use of the property is for public purposes and any private use of the property is merely incidental.  See 
Rosewell
, 133 Ill. App. 3d at 156.  A municipal corporation seeking a tax exemption on its property cannot meet its burden of demonstrating that its property is in exempt use merely by presenting evidence that it intends to use that property for tax exempt public purposes in the future; rather, it must demonstrate that it actually used the property primarily for public purposes during the tax year in question.  See 
Skil Corp. v. Korzen County Treasurer
, 32 Ill. 2d 249, 252, 204 N.E.2d 738 (1965); 
see also 
Illinois Institute of Technology v. Skinner
, 49 Ill. 2d 59, 64, 273 N.E.2d 371 (1971) (citing 
Skil
 and holding that property was not entitled to a tax exemption because the taxpayer merely intended to use the property in the future for educational purposes).

Illinois courts have recognized that property loses its tax exempt status when a municipal corporation, like the District here, chooses to lease its property to a private entity for commercial purposes rather than to use the property for public purposes.  See 
Marshall County Airport Board v. Department of Revenue
, 163 Ill. App. 3d 874, 876, 516 N.E.2d 318 (1987).  The sole exception to this principle arises where the taxpayer can demonstrate that, following such leasing, the property continued to be used for public purposes and the primary use of the property remained tax exempt while any taxable use of the property was merely incidental.  See 
Rosewell
, 133 Ill. App. 3d at 156; 
DePaul University, Inc. v. Rosewell
, 176 Ill. App. 3d 755, 757, 531 N.E.2d 884 (1988).

Rosewell
, like the case at bar, involved the taxable status of certain property owned by the District
(footnote: 1) and located next to a channel.  The property was crossed by numerous drainage ditches, pipes, drains, and other utilities necessary to the District's corporate functions.  While the District chose to lease the property to a private entity, the property remained vacant and unimproved during the period of the leasehold.  The District also retained the right to interfere with the lessee's use of the property should the property have become necessary for the District's corporate purposes. 

Based upon these facts, the 
Rosewell
 court concluded that the District's decision to lease the property to a private entity had not precluded the property from being tax exempt.  
Rosewell
, 133 Ill. App. 3d at 156.  The 
Rosewell
 court followed the well-

established principle stated in 
Skinner
 that property owned by a municipal corporation can remain tax exempt despite the fact that it is leased to a private entity so long as the property is used primarily for an exempt purpose and only incidentally for a nonexempt purpose.  The 
Rosewell
 court found that the property in question was being used both for corporate drainage functions and as a right of way for the channel during the tax year in question.  
Rosewell
, 133 Ill. App. 3d at 156.  The court also recognized that the leasing had not interfered with the District's public use of the property and that the District had the right to interfere with the lessee's use of the land.  
Rosewell
, 133 Ill. App. 3d at 156.  Comparing the District's continuous tax exempt use of the property during the tax year in question with the lessee's taxable use of the property, the 
Rosewell
 court noted that during the period of the leasehold, "the property remained vacant and unimproved."  
Rosewell
, 133 Ill. App. 3d at 156.  Based upon this comparison, the court held that "the lease was merely an incidental use which did not alter the property's tax exempt character."  
Rosewell
, 133 Ill. App. 3d at 156.

In 
DePaul
, the court explained that 
Rosewell
 does not stand for the proposition that a taxpayer may obtain a tax exemption simply by demonstrating that taxable use of property by a lessee does not interfere with the taxpayer's exempt use of the property.  
DePaul
, 176 Ill. App. 3d at 757.  Rather, the 
DePaul
 court emphasized that the taxpayer must demonstrate that the property is primarily used for tax exempt purposes and that any taxable use of the property by the lessee is merely incidental.  
DePaul
, 176 Ill. App. 3d at 757.  The 
DePaul
 court then analyzed the facts confronting it and found that the subject property was not tax exempt because the lessee's taxable use of the property was more than merely incidental and was the primary use of the property.  
DePaul
, 176 Ill. App. 3d at 757-58.

Applying the foregoing principles and case law to the case at bar, we find that the Department's decision in denying the District a tax exemption on its property was not clearly erroneous because the District failed to demonstrate that the property was primarily used for tax exempt purposes during the course of the 1994 tax year and that any taxable use of the property was merely incidental.  The District did not dispute the fact that it had no facilities on the property during 1994, that it had used the property only as a right of way, and that it had leased the property to a private entity that had used it continuously as an employee parking lot.   Unlike the situation in 
Rosewell
 where the land in question was crossed by numerous drainage ditches, pipes, drains, and other utilities necessary for the performance of the District's duties, none of the District's facilities in the case at bar were located on the property at issue.  The only evidence the District submitted concerning its property use during the 1994 tax year was that maintenance vehicles crossed the property at least once per month to gain access to District facilities located north of the property.  

Moreover, unlike the situation in 
Rosewell
 where the property was leased to a private entity which made extremely limited use of that property, allowing it to remain vacant and unimproved during the tax year in question, the evidence submitted by the District in the case at bar demonstrated that Crossover continuously used the property for taxable purposes as an employee parking lot.  The Department correctly compared the continuous taxable use of the property by the District's nonexempt lessee with the District's sporadic tax exempt use of the property and correctly concluded that the property was not primarily used for tax exempt purposes and the lessee's taxable use of the property was more than merely incidental. 

We reject 
the District's argument, based on 
Rosewell
, that to show that its property was primarily used for public purposes it need not have demonstrated that it "uses the property more" than its for-profit lessee but, rather, that it had a superior right to use that property.  Stated differently, the District claims that where land owned by a tax exempt entity is used for two different purposes, one exempt and one taxable, the property remains tax exempt so long as the tax exempt owner at all times has the ability to take control of that property.  Contrary to the District's argument, 
Rosewell
 did not hold that a taxpayer could obtain a tax exemption on its property based on its superior right to control that land.  Rather, the 
Rosewell
 court based its ruling on a comparison of the relative extent to which the property at issue was used for taxable and tax exempt purposes.  Moreover, as the court in 
DePaul
 explained, it is the primary use of the property, rather than the fact that the lessee's use of the property does not interfere with the lessor's tax exempt use, which determines the property's taxable status.  
DePaul
, 176 Ill. App. 3d at 757.

We note that the District attempted to rely on the possibility that it might use the property for public purposes in the future.  The District pointed out that the lease between it and Crossover contained provisions substantially limiting the manner in which Crossover could use the property and granting the District the right to construct facilities on the property at any time.  Such evidence, however, was no substitute for proof of the actual tax exempt use of the property during the taxable year 1994.  
See 
Skil
, 32 Ill. 2d at 252; 
Comprehensive Training and Development Corp. v. County of Jackson
, 261 Ill. App. 3d 37, 40, 633 N.E.2d 189 (1994).  Any restrictions the District placed on the property and any intentions the District may have had regarding the future use of the property did not relieve the District of its burden of clearly and convincingly demonstrating that in 1994 the property was actually in use  primarily for tax exempt purposes.  See 
Skil
, 32 Ill. 2d at 250-52; 
Immanuel Evangelical Lutheran Church of Springfield v. Department of Revenue
, 267 Ill. App. 3d 678, 679, 642 N.E.2d 1344 (1994).

The District also argues that certain statements of law and fact made by the Department in the course of rendering its decision were incorrect.  The District asserts that the Department incorrectly found that "the evidence of the actual use of the Property by [the District] was speculative" and that "[i]t was established that [the District] uses the property to perform maintenance functions and maintains rights of way over the Property for other corporate purposes."   This argument misreads the Department's finding.  An examination of the Department's decision in this case reveals that the Department did not find that there was no evidence indicating that the District had actually used the property for tax exempt purposes during the 1994 tax year.  Rather, the Department found that there was insufficient evidence to establish that it was the District which primarily used the property and that the District's intention to use the property in the future for tax exempt purposes was no substitute for evidence of actual use.  The Department specifically recognized that Dr. Paintal, a District employee, had testified that the District's maintenance personnel crossed the property at least once per month. It also recognized that the District had submitted evidence concerning how it might use the property in the future.  The Department held, however, that this evidence was simply insufficient to demonstrate that the property was actually used primarily for tax exempt purposes, stating as follows:

"One could plausibly argue that the District's unimpeded access provides evidence of appropriate exempt use.  However, at best, this evidence establishes that the lessee's use was not inconsistent with that of the District; or, more accurately, that nothing in Crossover's use prevented the District from accessing the premises on what Dr. Paintal characterized as a 'periodic' basis.  For these reasons, I conclude that the applicant's use of the subject property in 1994 was, at best, incidental to that of the lessee."  

The Department's decision to deny the District tax exempt status for its property was appropriately based upon the fact that the District had failed to demonstrate that the property was actually used primarily for tax exempt purposes during the 1994 tax year.  See 
Skil
, 32 Ill. 2d at 250-51.  Because the property at issue was not primarily used by the District for public purposes and was more than incidentally used for taxable purposes as a private parking lot, we hold that the Department did not err in refusing to grant the District tax exempt status on the property.

We briefly note that the District's submission of evidence regarding the tax exempt status of the property in the tax year 1961 did not support the District's claim for tax exempt status for the 1994 tax year.  As this court recognized in 
Jackson Park Yacht Club v. Department of Local Government Affairs
, 93 Ill. App. 3d 542, 417 N.E.2d 1039 (1981), the fact that a taxpayer has received a tax exemption on its property for a prior tax year does not demonstrate that it is entitled to tax exempt status in a subsequent year.  
Jackson Park
, 92 Ill. App. 3d at 546 (stating that 
"even where the ownership and use of the property remain the same, a party may be required to relitigate the issue of its exemption annually").

The Department also contends that its determination that the property should not be listed as a leasehold interest in the name of Crossover, the District's lessee, was also not clearly erroneous.  We agree.  Under section 9--195 of the Code, tax exempt property leased to a private, taxpaying entity may, in limited circumstances, be listed on the tax rolls as a leasehold and the taxes billed to the lessee.  Section 9--195 provides:  

"[W]hen property which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the property taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his or her assignee.  Taxes on that property shall be collected in the same manner as on property that is not exempt, and the lessee shall be liable for those taxes.  However, no tax lien shall attach to the exempt real estate."  35 ILCS 200/9--195 (West 1994).

Section 9--195 applies, however, only where the owner's underlying fee interest in the property is tax exempt and where that fee interest remains tax exempt subsequent to the leasing.  See, 
e.g.
, 
Korzen v. American Airlines, Inc.
, 39 Ill. 2d 11, 13-15, 233 N.E.2d 568 (1967).   

In the case at bar, the property was not eligible for listing as a leasehold under section 9--195 because, as discussed above, the District's leasing of the property caused the District to lose its tax exempt status on its fee interest in that property for the 1994 tax year.  Following the District's leasing of the property to Crossover, the property ceased to be used primarily for public purposes because Crossover's use of the land for nonpublic purposes became more than merely incidental.  Accordingly, since the District's fee interest in the property was no longer tax exempt, section 9--195 did not apply and the Department properly concluded that the property should not be listed and taxed as a leasehold.

Lastly, the District asserts that the Department has violated article IX, section 2 of the Illinois Constitution of 1970, regarding uniformity of taxation,
(footnote: 2) and the equal protection clauses of the United States Constitution and Illinois Constitution by imposing taxes on the property at issue while not imposing taxes on other property owned by the District.  Specifically, the District argues that the Department is unable to "reconcile" its denial of a tax exemption for the property at issue in this case with its prior decision to grant tax exempt status to a tract located directly to the north and leased to a private company called Monarch.  

Where a taxpayer alleges a constitutional violation of unequal taxation, the taxpayer bears the burden to come forward with evidence demonstrating that its rights have been violated.  See 
DuPage County Board of Review v. Property Tax Appeal Board
, 284 Ill. App. 3d 649, 652, 672 N.E.2d 1309 (1996).  To meet its burden, the taxpayer must present evidence demonstrating that its property was similarly situated to the property granted tax exempt status.  See 
Kankakee County Board of Review v. Property Tax Appeal Board
, 131 Ill. 2d 1, 21-22, 544 N.E.2d 762 (1989); 
Communications & Cable of Chicago, Inc. v. City of Chicago
, 282 Ill. App. 3d 1038, 1048-

49, 668 N.E.2d 1032 (1996).  

In the case at bar, to demonstrate that the property at issue was similarly situated to its other tax exempt property, the District was required to show that the Monarch property, or any other tax exempt property it owned, was leased to a private entity and that the only actual use of that property during the tax year in question was as a right of way.  While the District introduced evidence that it owned land which was leased to private entities and that this land was exempt from taxation, it failed to present evidence concerning the extent to which it made use of that property for its public purposes.  The District, therefore, failed to provide sufficient evidence to show that its tax exempt property was similarly situated to the property at issue in the case at bar.  In conclusion, the District failed to meet its burden of clearly and convincingly demonstrating that the property was primarily used for purposes which were tax exempt after leasing the property and that any taxable use of the property was merely incidental.

For the reasons stated, we reverse the judgment of the circuit court.

Reversed.

CAHILL, P.J., and WOLFSON, J., concur.

FOOTNOTES
1:
For more than a century, the District has been known either as the Sanitary District of Chicago or the Metropolitan Sanitary District of Greater Chicago.  

2:
While the District cites article IX, section 2 of the Illinois Constitution, which relates to "non-property taxes or fees," the District apparently intended to refer to article IX, section 4, which requires uniformity in the valuation of real property.