SALT CREEK RURAL PARK DISTRICT, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—01—0847

Opinion filed September 17, 2002.

Daniel C. Shapiro, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of counsel), for appellees.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Salt Creek Rural Park District (the park district) appeals an Illinois Department of Revenue (Department) order denying tax-exempt status for 11 acres of land. We affirm.

The record reveals that the park district filed an application with the Illinois Department of Natural Resources (IDNR) for a matching funds grant to purchase 11 acres of land. The IDNR does not allow a park district to use grant funds to cover the purchase price of land already owned by it. So the park district entered into an "agreement" with the Corporation for Open Lands (Corlands), titleholder of the 11 acres. Under the agreement, Corlands would hold title to the land until the grant was approved.

Corlands had acquired the land under a deed in trust executed on October 9, 1996. Corlands then leased the land to the park district from November 1, 1996, until January 31, 1998. The agreement referred to the parties as "landlord" and "tenant," and structured the payments to be made by the park district. The agreement required the park district to use the land for park district purposes only. The agreement also gave the park district an option to purchase the land, terminating the agreement. The park district exercised this option in June 1997 and acquired full title.

The park district filed a real estate tax-exemption complaint for the year 1996 with the Cook County Board of Review on January 27, 1997, six months before acquiring title. This complaint sought a finding that the land was tax exempt under section 15—105(b) of the Property Tax Code (the Code) (35 ILCS 200/15—105(b) (West 2000)). This section reads:

"(b) All property belonging to any park or conservation district with less than 2,000,000 inhabitants is exempt. All property leased to such park district for $1 or less per year and used exclusively as open space for recreational purposes not exceeding 50 acres in the aggregate for each district is exempt." 35 ILCS 200/15—105(b) (West 2000).

The Board of Review recommended that a partial exemption be granted from November 1 through December 31, 1996, the two-month period the Corlands agreement was in effect. The Department overruled the Board of Review and denied the request for tax-exempt status.

An administrative hearing was held on June 24, 1999. The park district submitted evidence of the Corlands agreement, characterizing the arrangement as a "pass through" to allow the park district to purchase land with government funds. The park district analogized the agreement to a constructive trust.

An administrative law judge affirmed the Department's denial of tax-exempt status on October 12, 1999. He found that the park district did not own the land in November and December, but leased it. The administrative law judge rejected the constructive trust argument of the park district. He also rejected the argument that the option to purchase the land made the agreement something other than a lease.

The administrative law judge then found that the statutory requirements for a leasehold exemption were not met. The lease between the park district and Corlands required rent payments of more than $1 per year. No evidence was presented that the land was used for tax-exempt purposes during the 1996 tax year. 35 ILCS 200/ 15—105(b) (West 2000).

The park district filed a complaint for administrative review in the circuit court on November 16, 1999. An amended complaint was filed on May 2, 2000. The amended complaint added Cook County as a defendant and sought additional relief for taxes levied against the lots since 1997. The trial court granted a motion to strike Cook County as a defendant and the newly added counts. The court then affirmed the denial of tax-exempt status for 1996.

On appeal, the park district argues that the land is tax exempt under sections 15—105(b) and 15—80 of the Code (35 ILCS 200/15— 105(b), 15—80 (West 2000)). The park district also contends that the trial court improperly denied alternative and prospective relief. We first consider our standard of review.

The park district suggests a *de novo* review. The Department argues for a clearly erroneous standard, claiming that the park district's right to a tax exemption turns on a showing that the lease was a constructive trust or an installment contract or that the land was used for recreational purposes. The Department cites to *Lutheran Church of the Good Shepherd of Bourbonnais v. Department of Revenue*, 316 Ill. App. 3d 828, 737 N.E.2d 1075 (2000). We disagree with the Department's argument.

■ The *Lutheran Church* court's adoption of the clearly erroneous standard in the case before it is based on our supreme court's discussion of appropriate standards of review in the administrative review context in *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 692 N.E.2d 295 (1998). Questions of fact are reviewed under a manifest weight of the evidence standard, while questions of

law are subject to *de novo* review. *Belvidere*, 181 Ill. 2d at 204-05. But mixed questions of law and fact—questions that require an examination of the legal effect of a given set of facts—are reviewed for clear error, a standard in between the manifest weight and *de novo* standards. *Belvidere*, 181 Ill. 2d at 205. Applying a clearly erroneous standard to mixed questions of law and fact provides the necessary deference to the agency's experience and expertise. *Belvidere*, 181 Ill. 2d at 205. This deference stems from an administrative agency's power to make informed judgments on the issues based on experience and expertise and the agency's role as an informed source for ascertaining the legislature's intent. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 98, 606 N.E.2d 1111 (1992). Deference was appropriate in *Belvidere*, where the court was reviewing a collective bargaining decision by the Illinois State Labor Relations Board. *Belvidere*, 181 Ill. 2d at 193. In *Lutheran Church*, the dispositive question was whether the land was being used exclusively for church purposes and turned on evidence of how the land was being used, a fact-based inquiry in which "use" has a distinct meaning in the tax context. *Lutheran Church*, 316 Ill. App. 3d at 833.

But here, the Department based its decision on an interpretation of the legal consequences of the agreement between Corlands and the park district, an interpretation of a contract that did not implicate the expertise of the Department.

This conclusion is in keeping with cases interpreting *Belvidere* to require a clearly erroneous standard where the mixed question of law and fact implicates questions of law uniquely within the expertise of an agency charged with administration of a statute. See *Metropolitan Water Reclamation District of Greater Chicago v. Department of Revenue*, 313 Ill. App. 3d 469, 474, 729 N.E.2d 924 (2000) (clearly erroneous standard applied to determine property was "used for public purposes" under section 15—75 of the Code); *Bloom Township High School District 206 v. Illinois Educational Labor Relations Board*, 312 Ill. App. 3d 943, 953, 728 N.E.2d 612 (2000) (clearly erroneous standard applied to review whether the Illinois Educational Labor Relations Board properly granted extension and exercised jurisdiction over the case under the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 1998))); *Devoney v. Retirement Board of the Policemen's Annuity & Benefits Fund*, 231 Ill. App. 3d 1, 5, 746 N.E.2d 836 (2001) (clearly erroneous standard applied to review finding that police officer pension benefits were forfeited under section 5—227 of the Pension Code (40 ILCS 5/5—227 (West 1998))); *Carpetland U.S.A., Inc. v. Department of Employment Security*, 319 Ill. App. 3d 1068, 1072, 746 N.E.2d 738 (2000) (clearly erroneous standard applied to

review finding that services provided amounted to "employment" under section 206 of the Unemployment Insurance Act (820 ILCS 405/ 206 (West 2000))).

Unlike the collective bargaining agreement in *Belvidere*, which required the Illinois State Labor Relations Board to interpret the meaning of wages, hours and conditions of employment in light of a collective bargaining agreement, or the facts about "use" in the tax context in *Lutheran Church*, the inquiry here requires an analysis of the language in the agreement to determine whether it was something other than a lease. It did not implicate the Department's experience and expertise in revenue issues. While later in this opinion we point out that there is a lack of evidence of use of the land for tax-exempt purposes by the park district, we do so only to distinguish this case from one upon which the park district relied. The fundamental issue in this case is a determination of the legal nature of the agreement between Corlands and the park district. The Department read it as a lease. The park district read it as something other than, or in addition to, a lease. The Department's finding that the agreement was a lease is one we review *de novo*. In passing, we observe that even under the more deferential standard the Department urges upon us, the result would be the same.

■ The park district claims a right to a tax exemption under either section 15—105(b) or section 15—80 of the Code (35 ILCS 200/15—105(b), 15—80 (West 2000)). Section 15—80 exempts land purchased by a governmental entity under an installment contract. 35 ILCS 200/ 15—80 (West 2000). In effect, the park district's section 15—80 argument is an alternative to section 15—105(b): if the agreement, read as a lease, does not meet section 15—105(b) requirements for tax exemption, then it should be read as an installment contract under section 15—80. The park district conceded during oral argument that this issue was not raised before the administrative agency. The park district argued that waiver should not apply because the Department responded when the park district raised the issue on appeal. We disagree.

■ Issues not raised before an administrative agency are waived on review. *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 726 N.E.2d 65 (2000). While there is some authority for addressing an issue raised for the first time on review (*People v. Abadia*, 328 Ill. App. 3d 669, 675, 767 N.E.2d 341 (2001), citing *People v. Hicks*, 181 Ill. 2d 541, 544, 693 N.E.2d 373 (1998)), relaxation of the waiver rule is premised on the matter being one of first impression or the need for maintaining a sound body of precedent. That is not the case here. Also, the park district conceded before the Board of Review the agreement was a lease.

Addressing the lease issue, the park district maintains that, since the lease conferred more rights than a standard lease, the administrative law judge erred in not considering the true nature of the agreement. The park district contends that, "when examined in its entirety, [the agreement] is simply not that of a standard lease. Rather, while Corlands held naked title to the property during the terms of the agreement, the beneficial interest was actually vested in the park district." The park district is using the term "beneficial interest" in a narrow way. The argument attempts to shape the agreement to fit section 15—105(b) of the Code. The park district suggests that the land "belonged" to the park district as a beneficiary of a land trust held by Corlands. A similar argument was raised by the park district attorney at the hearing before the administrative law judge. There, the park district attorney analogized the agreement to a constructive trust:

"In essence I believe the law would impose a relationship of a constructive trust, where one party, Corlands would be holding the property in trust for the park district until a certain time period, which is the expiration of the lease and after the application for the grant is completed."

A land trust is "any express agreement or arrangement [where] a use, confidence or trust is declared of any land *** for the use or benefit of any beneficiary, under which the title to real property, both legal and equitable, is held by a trustee" and the beneficiary retains the right to manage and control the land. 765 ILCS 405/1 (West 2000). But the lease here makes no declaration of trust and does not declare Corlands as trustee or the park district as beneficiary. Corlands and the park district are referred to as "landlord" and "tenant."

A constructive trust arises by operation of law. *Suttles v. Vogel*, 126 Ill. 2d 186, 193, 533 N.E.2d 901 (1988). A constructive trust is imposed where there is actual or constructive fraud or where there is a breach of a fiduciary duty. *Suttles*, 126 Ill. 2d at 193. Some form of wrongdoing is needed to impose a constructive trust. *Suttles*, 126 Ill. 2d at 193. None of these elements is present here. The park district's reliance on *People ex rel. Goodman v. University of Illinois Foundation*, 388 Ill. 363, 58 N.E.2d 33 (1944), and *Southern Illinois University Foundation v. Booker*, 98 Ill. App. 3d 1062, 425 N.E.2d 465 (1981), is misplaced.

In *Goodman*, although the University of Illinois Foundation leased the land to the board of trustees, the lease postdated an earlier transaction in which the board conveyed the land to the foundation " 'to hold said property in trust.' " *Goodman*, 388 Ill. at 366. There is no declaration of trust here.

At issue in *Booker* was the tax-exempt status of dormitories leased

to the board of trustees of Southern Illinois University (SIU) by the Southern Illinois University Foundation, which held title to the land. *Booker*, 98 Ill. App. 3d at 1063. Similar to the role Corlands plays here, a purpose of the foundation in *Booker* was to acquire and hold title to land which the university was prohibited from doing. *Booker*, 98 Ill. App. 3d at 1067. But the analogy between the SIU foundation and Corlands breaks down when the facts in *Booker* are examined. In *Booker* the court reasoned:

> "Southern Illinois University Foundation is not readily separable from the University and, consequently, the State. Although the Foundation is a corporate entity legally distinct from that of the University, the function of the one is expressly 'to promote the interests and welfare' of the other, and some of the highest officers of the University are required, under the bylaws of the Foundation, to serve in some of the highest positions of the Foundation. Thus, a further reality of the ownership of this property is the identification to a certain extent between the holder of bare legal title and the State as holder of the entire equitable interest. In this case, then, not only does the Foundation hold but naked legal title to property controlled and enjoyed by the State, but a certain identity exists as well between the holder of naked legal title and the State. For these reasons we hold the property exempt from taxation as property belonging to the State." *Booker*, 98 Ill. App. 3d at 1070-71.

Corlands had no such relationship with the park district. The undisputed facts show that Corlands is an independent entity that held title to the land leased to the park district.

Unlike the land here, the university also *used* the dormitories for a tax-exempt purpose: student housing. All incidents of ownership were vested in and exercised by the university. *Booker*, 98 Ill. App. 3d at 1066. As the court noted:

> "With respect to control and enjoyment of the benefits of the property, the stipulated facts show that the University, not the Foundation, in fact controls the property and has the right to enjoy the benefits of it in the manner of an owner in fee simple absolute. The Foundation acquired title to the property from the University solely as a convenience to the University ***. *** *The facilities are controlled, operated and maintained by the University.*" (Emphasis added.) *Booker*, 98 Ill. App. 3d at 1070.

The relationship between the University and the Foundation it created was an important factor in the *Booker* court's decision to read what appeared to be a lease as something more than a lease. But the undisputed evidence of *actual use* present in *Booker* was significant and also distinguishes *Booker* from the facts before us. The park

district here presented no evidence that it either took possession of or exercised control over the land during the time for which an exemption is sought.

The park district all but conceded the lack of this evidence at oral argument, stressing its *future* intention to use the land as open space for recreational use. But "[i]ntention to use is not the equivalent of use." *Skil Corp. v. Korzen*, 32 Ill. 2d 249, 252, 204 N.E.2d 738 (1965). Nor is it relevant that the Department failed to present evidence that the land was not being used for a tax-exempt purpose. The park district, not the Department, bore the burden of presenting proof of actual use for an exempt purpose. *Immanuel Evangelical Lutheran Church of Springfield v. Department of Revenue*, 267 Ill. App. 3d 678, 642 N.E.2d 1344 (1994); *Skil*, 32 Ill. 2d at 252. The only conclusion that can be drawn from this record is that the land was vacant and unused during the 1996 tax year, although the park district held a leasehold interest. The arrangement required the park district to meet the requirements of section 15—105(b) of the Code to establish tax-exempt status: a lease payment of $1 or less per year and use as open space for recreational purposes. The record reveals, and the park district admits, that these requirements were not met.

We next address the park district's claim that the trial court erred when it denied prospective relief relating to taxes levied after 1997. The park district contends that section 3—111(2) of the Administrative Review Law allows entry of "any" order necessary "for the amendment, completion or filing of the record of proceedings of the administrative agency." 735 ILCS 5/3—111(2) (West 2000). The park district overlooks the plain language of section 3—111(2), limiting the range of potential orders to those relating to "proceedings of the administrative agency." The only proceedings before the administrative agency here related to tax-exempt status for the 1996 tax year. The only orders that may be entered under the authority granted in section 3—111(2) must relate to the 1996 complaint. See *Straub v. Zollar*, 278 Ill. App. 3d 556, 663 N.E.2d 80 (1996) (strict adherence to administrative procedures required to justify its application).

The judgment of the administrative law judge denying tax exemption under section 15—105(b) for the 1996 tax year is affirmed.

Affirmed.

McBRIDE, P.J., and BURKE, J., concur.