(text box: 1) NO. 5-02-0541

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE FRANKLIN COUNTY BOARD )  Appeal from the

OF REVIEW and EWING NORTHERN )  Circuit Court of

COMMUNITY CONSOLIDATED )  Franklin County.

SCHOOL DISTRICT NO. 115, )

)

Plaintiffs-Appellants, )

and )

)

BENTON COMMUNITY HIGH )

SCHOOL DISTRICT NO. 103, )  Nos. 01-MR-12 & 01-MR-13

)  (Consolidated)

Plaintiff, )

v. )

)

THE DEPARTMENT OF REVENUE   )

and REND LAKE CONSERVANCY )

DISTRICT, )  Honorable 

)  E. Kyle Vantrease,

Defendants-Appellees. )  Judge, presiding.

___________________________________________________________________________

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiffs filed complaints in the circuit court of Franklin County for the administrative review of a decision by the Department of Revenue of the State of Illinois (Department).  The Department had granted real estate exemptions for three parcels of land owned by the Rend Lake Conservancy District (Rend Lake), one of the defendants herein.  The circuit court affirmed the Department, and two of the plaintiffs appeal.  We affirm.  

I. BACKGROUND 

Rend Lake applied for property tax exemptions for assessment year 1999 for three parcels of real estate on which a restaurant, a hotel, and a condominium complex are located.  Rend Lake sought tax exemptions for this real estate under section 15-75 of the Property Tax Code (35 ILCS 200/15-75 (West 1998)), which provides, in part, that public grounds owned by a municipal corporation and used exclusively for public purposes are tax exempt.  The Department found that the properties were not in exempt use, and it denied Rend Lake's applications.  

Rend Lake requested a hearing before an administrative law judge (ALJ) pursuant to section 8-35 of the Property Tax Code (35 ILCS 200/8-35 (West 2000)).  The ALJ framed the issues for the hearing in a pretrial order entered on July 10, 2000: (1) whether Rend Lake is a municipal corporation, (2) whether Rend Lake owns the real estate for which the exemptions were sought, and (3) whether Rend Lake used the real estate for public purposes during the 1999 assessment year.  Ewing Northern Community Consolidated School District No. 115 (Ewing) and Benton Community High School District No. 103 (Benton) intervened as plaintiffs in the proceeding.  They filed a response with the ALJ and admitted that Rend Lake was a municipal corporation and that Rend Lake was eligible for a property tax exemption pursuant to section 15-75 of the Property Tax Code, if the real estate was used exclusively for public purposes.  They denied that the real estate was used exclusively for public purposes.  

Plaintiff Franklin County Board of Review (Board) did not participate in the administrative hearing.  Rend Lake's general manager and consulting engineer testified, as did the school superintendents for Ewing and Benton.  The following evidence was presented to the ALJ.  The creation of Rend Lake, a special-purpose unit of government, was authorized by the River Conservancy Districts Act.  Ill. Rev. Stat. 1953, ch. 42, par. 383 
et seq.
 (now see 70 ILCS 2105/1 
et seq.
 (West 2002)).  It came into existence in 1955 in response to local water-supply problems.  It is one of three river conservancy districts in Southern Illinois and is located about 18 miles south of Mt. Vernon on Interstate 57.  Rend Lake was given broad powers to accomplish a number of objectives for Southern Illinois, including water supply and distribution, sewage treatment, conservation, and recreation.  Rend Lake supplies water to 55 cities, villages, and water districts and an additional 700 households, via 300 miles of distribution pipes.  Rend Lake also has a sewage plant in the Village of Ewing.  

Rend Lake's promotional material in the record refers to a recreation complex and boasts of millions of visitors annually.  It consists of 18,900 acres of water and 20,000 acres of land.  The lake, including dams and a reservoir, was constructed by the United States Army Corps of Engineers (Army Corps) from 1965 to 1972 for the purposes of flood control, water supply and quality control, conservation, recreation, and the redevelopment of the area.  It cost $60 million.  The management of the lake and surrounding forest areas is shared by the Army Corps, the State of Illinois, and Rend Lake.  

Rend Lake's recreation complex is large and diverse.  The shooting complex houses a 10-station trap field, a skeet range, a sporting clay range, a 3-D archery range, and a five-stand range.  A state-licensed public hunting preserve is located within the 300 acres surrounding the shooting complex, and visitors may go on guided hunts with dogs provided by Rend Lake.  The golf facility includes a 27-hole course, a driving range, practice greens, a clubhouse, and a pro shop.  There are more than 20 boat ramps on the lake, but Rend Lake operates only one.  The recreation complex also houses the Southern Illinois artisan shop, where local artists display their work for sale.  The artisan shop is owned by the State of Illinois.  Rend Lake, in conjunction with other state and federal agencies, hosts numerous festivals and events.  Swimming, camping, boating, cycling, horseback riding, and other activities are also available at Rend Lake. 

In addition to the foregoing, Rend Lake owns and operates a restaurant, known as the Seasons Restaurant, which includes a dining room, a lounge, a kitchen area, and a banquet room.  It offers general restaurant and banquet services.  Rend Lake owns and operates a 40-unit hotel, referred to as the Seasons Hotel, and 22 condominiums in a complex called the Fairway Condominiums.  (The status of these three properties for the 1999 assessment year is the subject of this appeal.  Prior to 1999 they were owned or leased to and operated by private, for-profit entities.)  All of Rend Lake's recreational facilities are open and available to the public for a charge, except the boat ramp, which is free.  All of Rend Lake's recreational facilities are used by the local citizenry and out-of-town tourists.  Visitors at Rend Lake often participate in multiple activities during one visit.  

Rend Lake, as a governmental unit, is exempt from sales tax and is not taxed on other operations, including its farm, oil, water, and sewer activities.  Rend Lake's income is derived from fees charged for activities noted above and tax revenue.  All the revenue generated by Rend Lake's facilities and operations, except water revenue, is deposited into the general bank accounts for Rend Lake, from which expenses are paid.  In any given year, if there is a surplus, no profits are distributed, because Rend Lake is not a for-profit enterprise.  There are no shareholders, partners, or owners.  

The ALJ received lists (consisting of several hundred pages) containing the names of individuals and organizations that used the banquet facilities at the restaurant and stayed at the hotel and condominiums in 1999.  These records reflect that in 1999, the banquet facilities were reserved by more than 400 individuals and private and public entities.  The hotel logged a total of 7,665 room nights in 1999.  The lists provide the names of the individuals who stayed at the hotel and the dates of their arrival and departure.  The purpose of those individuals' visits and their places of residence are not noted.  The vast majority of the individuals who stayed at the hotel in 1999 stayed one to two days.  The 22 condominiums logged 607 room nights from July through December of 1999.  These lists are difficult to decipher, but according to the Board's brief, one of the condominiums was leased to an individual for four months and three others were leased to individuals for three months or less.  The remaining 18 condominiums appear to have been leased in 1999 to different people for one to three days at a time.  

The parties briefed their arguments after the hearing.  Ewing and Benton, in their joint memorandum of law, set forth one argument, 
i.e.
, that Rend Lake failed to show that the real estate had been used exclusively for public purposes in assessment year 1999.  Neither Ewing nor Benton challenged Rend Lake's status as a municipal corporation or the ownership of the subject real estate. 

The ALJ recommended that the restaurant and hotel parcels be exempt from taxation for the 1999 assessment year and that the condominiums be exempt for 49% of the 1999 assessment year, pursuant to section 15-75 of the Property Tax Code (35 ILCS 200/15-75 (West 1998)).  (The condominiums were owned by Rend Lake for only 49% of the year.)  The ALJ's "Recommendation for Disposition" included lengthy and detailed factual findings and conclusions of law.  He concluded that the enabling legislation for river conservancy districts delineated a number of purposes, public in nature, and that the subject real estate was primarily used to fulfill those purposes.  The Director of Revenue accepted the ALJ's recommended decision, and the plaintiffs sought administrative review pursuant to the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 2000)), in the Franklin County circuit court.  

Two complaints for administrative review were filed, one by the Board and the other by Ewing and Benton.  The administrative review actions were consolidated.  The plaintiffs raised a number of issues before the circuit court that they had not presented to the ALJ for his consideration during the administrative proceedings.  They argued that the subject real estate should not be tax exempt because (1) the legislature did not enact a specific or ownership-based tax exemption for river conservancy districts, (2) the legislature treated river conservancy districts uniquely compared with other special districts covered by chapter 70 of the Illinois Compiled Statutes, by not providing a specific tax exemption and by adding cost-recovery language in the River Conservancy Districts Act, which, as they argue, reveals the legislature's intent that a district pay property tax, (3) the cost-recovery language in the River Conservancy Districts Act nullifies the general tax exemption for municipal corporations, (4) the Department erred in interpreting section 15-75 of the Property Tax Code in contradiction of legislative intent and failed to address whether the real estate represented public grounds used exclusively for public purposes, and (5) the evidence in the administrative record does not support an exemption because insufficient facts exist to show that the real estate consisted of public grounds that were used exclusively for public purposes. 

The circuit court considered the merits of all the arguments presented and affirmed the Department's decision granting property tax exemptions to Rend Lake.  Only the Board and Ewing appeal.  Ewing has adopted the Board's briefs and argument.  The Department and Rend Lake filed separate briefs, and the Illinois Association of Park Districts submitted an 
amicus curiae
 brief in support of Rend Lake.

II. ANALYSIS

We first address the Department's contention that the Board and Ewing waived a number of issues because they raised them for the first time in the circuit court.  The Board and Ewing contend that their arguments are not waived because Rend Lake failed to assert the waiver doctrine before the circuit court. 

The general rule is that issues or defenses not raised by the parties before the administrative agency will not be considered for the first time on administrative review.  The waiver rule is necessary to avoid piecemeal litigation and to permit opposing parties an opportunity to refute the arguments presented to the agency.  This is especially true because administrative review is limited to the proof offered before the ALJ.  
Carpetland U.S.A., Inc. v. Illinois Department of Employment Security
, 201 Ill. 2d 351, 396-97, 776 N.E.2d 166, 192 (2002).  Raising an issue for the first time before the circuit court is not sufficient to preserve the matter for review.  
S.W. v. Department of Children & Family Services
, 276 Ill. App. 3d 672, 679, 658 N.E.2d 1301, 1307 (1995).  

Waiver is a limitation on the parties and not on a court's jurisdiction.  
Carpetland U.S.A., Inc.
, 201 Ill. 2d at 397, 776 N.E.2d at 192.  Although we may relax the waiver doctrine in certain circumstances, we choose not to in this case.  See 
Salt Creek Rural Park District v. Department of Revenue
, 334 Ill. App. 3d 67, 71, 777 N.E.2d 515, 520 (2002); 
Freedom Oil Co. v. Illinois Pollution Control Board
, 275 Ill. App. 3d 508, 655 N.E.2d 1184 (1995).  To do otherwise would result in insurmountable prejudice to Rend Lake and a deprivation to the Department of the opportunity to initially construe the law that it has a duty to apply.  See 
Ranquist v. Stackler
, 55 Ill. App. 3d 545, 549-50, 370 N.E.2d 1198, 1202 (1977).  Thus, we find that the Board and Ewing have waived all of their arguments advanced on appeal except the issue of whether the Department erred in finding that the real estate was used exclusively for public purposes.  

For this issue, the parties disagree on the proper standard of review.  In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 2002)), we review the administrative decision and not the circuit court's judgment.  
Metropolitan Water Reclamation District of Greater Chicago v. Department of Revenue
, 313 Ill. App. 3d 469, 474, 729 N.E.2d 924, 928-29 (2000).  It is the circuit court's task to judge whether the agency's decisions on questions of fact are against the manifest weight of the evidence.  
McLean v. Department of Revenue
, 326 Ill. App. 3d 667, 673, 761 N.E.2d 226, 232 (2001).  On review, we are to consider the administrative agency's findings of fact to be 
prima facie
 correct.  735 ILCS 5/3-110 (West 2002).  

The matter before us does not present a question of pure fact or pure law.  In order to decide whether the ALJ erred in applying the municipal corporation tax exemption to Rend Lake, we must determine whether the real estate was used exclusively for public purposes in 1999.  To do so, we must interpret statutory language and examine the legal effect of certain facts.  Thus, this appeal presents a mixed question of fact and law.  The applicable standard of review should be between a manifest-weight-of-the-evidence standard and a 
de novo
 standard, in order to provide some deference to the ALJ's experience and expertise.  We therefore find that the "clearly erroneous" standard of review is the proper standard in this case. See 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998); 
Metropolitan Water Reclamation District of Greater Chicago
, 313 Ill. App. 3d at 474, 729 N.E.2d at 929; 
Lutheran Church of the Good Shepherd of Bourbonnais v. Department of Revenue
, 316 Ill. App. 3d 828, 831, 737 N.E.2d 1075, 1078 (2000).  

We now turn to the merits of the Board's argument.  The Board argues that the Department improperly concluded that the restaurant, hotel, and condominiums were used primarily for public purposes in 1999.  Specifically, the Board contends that this real estate does not qualify for an exemption for 1999 under section 15-75 of the Property Tax Code (35 ILCS 200/15-75 (West 1998)) because it was used for commercial and long-term residential purposes.  The Department and Rend Lake argue that the ALJ's recommendation comports with Illinois decisional law. 

The ALJ made detailed factual findings and conclusions of law.  It is evident from the ALJ's written recommendation that he considered all the testimony, the evidence, the express language of the statutes, and the relevant case law.  In sum, the ALJ concluded that the restaurant, hotel, and condominiums were tax exempt because they were facilities of public accommodation made available to the general public for use in 1999 in connection with the use of the greater recreation complex at Rend Lake.  We find no clear error in the Department's factual findings, legal conclusions, and final recommendation. 

Rend Lake's creation was authorized by section 1 of Illinois's River Conservancy Districts Act (the Act), which stated in part:

"Whenever the unified control of a river system or a portion thereof shall be deemed conducive to the prevention of stream pollution development, conservation and protection of water supply, control or prevention of floods, reclamation of wet and overflowed lands, development of irrigation, conservation of soil, provision of domestic, industrial[,] or public water supplies, collection and disposal of sewage and other public liquid wastes, 
provision of forests, wildlife areas, parks
[
,
] 
and recreational facilities, and to the promotion of the public health, comfort
[
,
] 
and convenience
 the same may be organized as a conservancy district under this Act ***.

***  Such territory need not be contiguous, 
provided that it be so situated that the public health, safety, convenience
[
,
] 
or welfare will be promoted by the organization
 as a single district of the territory described."  (Emphasis added.)  Ill. Rev. Stat. 1953, ch. 42, par. 385 (now see 70 ILCS 2105/1 (West 2002)).  

Thus, the statute expressly states that some of the primary purposes of a conservancy district are to provide forests, wildlife areas, parks, and recreational facilities and to promote the public health, comfort, and convenience.  

Section 9b of the Act confers broad powers onto the board of a conservancy district to fulfill these statutory purposes, including the power to acquire land to establish recreational grounds and to construct buildings for recreational purposes.  70 ILCS 2105/9b(d) (West 2002).  The Act further authorizes conservancy district boards to develop, purchase, and operate: 

"[l]odges, cottages, trailer courts, and camping grounds, marinas and related facilities for the accommodation and servicing of boats, tennis courts, swimming pools, golf courses, skating rinks, skeet ranges, playgrounds, stables, bridle paths, and athletic fields, picnic grounds and parking areas, convention and entertainment centers, and other related buildings and facilities for the accommodation and recreation of persons visiting the reservoirs owned by the district or from which it is drawing a supply of water."  70 ILCS 2105/11(1)(c) (West 2002).

On its face, the statute permits Rend Lake to own and operate the restaurant, hotel, and condominiums involved in this case to enhance visitors' recreational experiences.

Rend Lake seeks the benefit of the municipal corporation tax exemption, which provides in part that public grounds owned by a municipal corporation and used exclusively for public purposes are tax exempt.  35 ILCS 200/15-75 (West 1998).  On review, we must construe the exemption strictly in favor of taxation.  The burden of proving that the exemption applies rests upon Rend Lake.  See 
City of Chicago v. Illinois Department of Revenue
, 147 Ill. 2d 484, 491, 590 N.E.2d 478, 481 (1992).  The mere fact that Rend Lake is a municipal corporation and owns the real estate does not automatically exempt it from taxation.  See 
Sanitary District of Chicago v. Hanberg
, 226 Ill. 480, 483, 80 N.E. 1012, 1013 (1907).  To prevail, Rend Lake must demonstrate that the restaurant, hotel, and condominiums were used in 1999 exclusively for public purposes.  Thus, we must determine whether the statutory purposes noted above are public and whether the real estate was used in furtherance of those purposes in 1999.

We hold that the purposes set forth by the legislature in the Act are public purposes.  The concept of public purpose is not static, but it must be flexible and capable of expansion to meet the modern complexities or our world.  
In re Marriage of Lappe
, 176 Ill. 2d 414, 430, 680 N.E.2d 380, 388 (1997).  In today's society, legislatures and the judiciary alike tend to broaden the scope of activities classified as involving public purposes.  
In re Marriage of Lappe
, 176 Ill. 2d at 431, 680 N.E.2d at 388.  In the case of the Act, very little, if any, expansion or broadening is required to find that the purposes therein are public in nature.  

Water, sewage, and drainage operations had been declared public purposes long before the Act was enacted.  See 
Sanitary District of Chicago v. Hanberg
, 226 Ill. 480, 483, 80 N.E. 1012, 1013 (1907); 
Metropolitan Sanitary District of Greater Chicago v. Rosewell
, 133 Ill. App. 3d 153, 156, 478 N.E.2d 1100, 1102 (1985); 
Long Island Water-Supply Co. v. City of Brooklyn
, 166 U.S. 685, 689, 41 L. Ed. 1165, 17 S. Ct. 718, 720 (1897).  Yet no express statement of public purpose is found in the Act for these specific operations.  The absence of an explicit legislative declaration that the water and sewage operations of Rend Lake constitute a public purpose does not negate the public nature of the legislation or Rend Lake's operations.  Likewise, we find that a conservancy district's charges to provide parks and recreational facilities and to promote the public comfort, convenience, health, safety, and welfare are inherently public in nature.  

We must now examine whether the restaurant, hotel, and condominiums were used exclusively for those purposes in 1999.  It is undisputed that these facilities provided dining, banquet, and overnight accommodations to Rend Lake visitors in 1999.  The provision of meals, meeting facilities, and lodging serves to enhance the overall recreational experience for visitors and promote the comfort and convenience for the visiting public; therefore, we have no difficulty in holding that these uses fulfill public purposes.  However, the Board argues that these properties were not used for public purposes because they were used by private individuals and businesses for a fee to further their personal agendas and because the hotel and condominiums were put to residential use.  We disagree.  

The evidence demonstrates that all of Rend Lake's facilities, including the restaurant, hotel, and condominiums, were open and available to the public in 1999.  They were used in 1999 by members of the public, which included individual persons, groups, businesses, and government organizations, among others.  The fact that Rend Lake charges a fee does not destroy the public purpose the facilities fulfill.  Indeed, the Act requires Rend Lake to charge fees for the use of its facilities.  Furthermore, the fact that some of the individuals or groups who used these facilities did not do so in conjunction with other activities at Rend Lake is irrelevant.  It is well-settled in this state that where the "primary and substantial use of the property is for a public purpose, an incidental or occasional use for private purposes does not deprive the property of its tax-exempt character."  
Metropolitan Sanitary District of Greater Chicago v. Rosewell
, 133 Ill. App. 3d 153, 156, 478 N.E.2d 1100, 1102 (1985). 

The Board's argument that the hotel and the condominiums cannot be tax exempt because they are put to residential uses is equally without merit.  The Board principally relies on 
Harrisburg-Raleigh Airport Authority v. Department of Revenue
, 126 Ill. 2d 326, 533 N.E.2d 1072 (1989), in support of this argument.  The 
Harrisburg-Raleigh Airport Authority
 court interpreted the meaning of "airport authority purposes" and construed a tax exemption specific to airport authorities; thus, the case is not directly applicable to the instant appeal.  However, the Illinois Supreme Court's reasoning, applied to the facts before us, supports Rend Lake's position.  The supreme court held that property leased to private parties (in some cases for a year at a time) which is used in a manner which bears a real and substantial relationship to airport-authority purposes is tax exempt.  
Harrisburg-Raleigh Airport Authority
, 126 Ill. 2d at 330, 335-36, 533 N.E.2d at 1073, 1075-76.  Employing similar logic and reasoning, we hold that the provision of overnight lodging, by way of daily rentals and short-term leases, bears a real and substantial relation to Rend Lake's public purposes of providing recreational facilities and promoting public safety, comfort, and convenience.  

Applying the foregoing principles and case law to the case at bar, we find that the Department's decision to grant Rend Lake tax exemptions on its real estate was not clearly erroneous because Rend Lake demonstrated that the real estate was primarily used for tax-exempt purposes during the 1999 assessment year.  Therefore, we affirm the Department's decision that the Seasons Hotel and the Seasons Restaurant, and the parcels on which they are located, be exempt from real estate taxation for the 1999 assessment year.  We also affirm the Department's decision that 22 units of the Fairway Condominiums, and the parcel on which they are located, be exempt from real estate taxation for 49% of the 1999 assessment year.  

Taken with the case were (1) Rend Lake's motion to bar the State's Attorneys Appellate Prosecutor from appearing as counsel on appeal for the Board, (2) the Board's response thereto, and (3) Rend Lake's motion for leave to reply to the response.  In light of our disposition in this case in favor of Rend Lake, we decline to pass on the foregoing.  

III. CONCLUSION

Based on the foregoing, we affirm the Department's decision. 

Affirmed.  

WELCH and MAAG, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 03/09/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.